UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2017 SEP 19 PM 3:21

UNITED STATES OF AMERICA

v.

CASE NO. 8:17-cr-447-T-30AEP
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)

OKECHUKWU DESMOND AMADI
   a/k/a "Desmond Amadi"

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h))

### A. Introduction

At times material to this Indictment:

1. OKECHUKWU DESMOND AMADI, a/k/a "Desmond Amadi" ("DESMOND AMADI"), was a citizen of Canada, a resident of Garland, Texas, and the brother of Ikechukwu Derek Amadi ("Ikechukwu Amadi").

2. Ikechukwu Amadi was a citizen of Canada and a resident of Ontario, Canada.

3. Dean Morgan ("Morgan") was a resident of Dallas, Texas, who worked in the insurance business, at times with and for DESMOND AMADI.

4. Muhammad Naji ("Naji") was a resident of Hillsborough County, Florida, who opened accounts at national banks in the Middle District of Florida and elsewhere and recruited others to do so for him.

5. Michele Ann Scalley ("Scalley") was a resident of Hillsborough County, Florida, who was recruited by, and worked with, Naji to open bank accounts in the Middle District of Florida.

6. "MS Products and Services" was a shell company established by Naji with the Florida Department of State, Division of Corporations, in Scalley's name. Naji and Scalley went on to open various bank accounts in the name of "MS Products and Services" for use by themselves and other conspirators.

### B. The Conspiracy

7. Beginning on an unknown date, but at least as early as in or around June 2014, and continuing through and including in or around July 2016, in the Middle District of Florida and elsewhere, the defendant,

OKECHUKWU DESMOND AMADI,
a/k/a "Desmond Amadi,"

did knowingly and willfully combine, conspire, and agree with Ikechukwu Amadi, Morgan, Naji, Scalley and other persons, both known and unknown to the Grand Jury, to commit offenses against the United States, in violation of 18 U.S.C. § 1956, that is:

2

  a. to conduct a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit, and transfer monetary instruments and funds which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, with the intent to promote the carrying on of said specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i);

  b. to conduct a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit, and transfer monetary instruments and funds which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

  c. to conduct a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit, and transfer monetary instruments and funds which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the

transaction was designed in whole and in part to avoid a transaction reporting requirement under Federal law, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii).

### C. Manner and Means

8. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

9. It was a part of the conspiracy that conspirators would and did use interstate wire communications to defraud individuals and businesses across the United States, including in the Middle District of Florida, and obtain funds from them by means of materially false and fraudulent pretenses and representations;

10. It was further part of the conspiracy that conspirators would and did incorporate shell companies with fictitious names and then open, and cause to be opened, bank accounts in the names of those shell companies at various federally-insured financial institutions in the Middle District of Florida and elsewhere. These accounts were opened exclusively for the purpose of receiving, transmitting, or otherwise obtaining the proceeds of specified unlawful activity;

11. It was further part of the conspiracy that conspirators would and did contact victims, via interstate and foreign emails and telephone calls, for the purported purpose of seeking assistance with transactional dealings and business matters. In truth and in fact, however, the purpose of those contacts was to gain access to those victims' bank accounts;

12. It was further part of the conspiracy that conspirators would and did acquire cashier's checks from various financial institutions;

13. It was further part of the conspiracy that conspirators would and did use those cashier's checks to forge new ones made payable to victims for tens to hundreds of thousands of dollars;

14. It was further part of the conspiracy that conspirators would and did send, and cause to be sent, via the United Parcel Service, Federal Express, and the United States Postal Service, forged cashier's checks to the victims in order to carry out the supposed business transactions;

15. It was further part of the conspiracy that conspirators would and did instruct victims to deposit the fraudulent cashier's checks into their bank accounts, and then promptly wire all or part of those funds across state lines into the bank accounts of shell companies and other entities created and controlled by conspirators;

16. It was further part of the conspiracy that conspirators would and did fraudulently obtain, and attempt to obtain, proceeds from romance schemes wherein conspirators targeted users of internet dating and social networking sites, feigned romantic relationships with those users, and created fictitious scenarios in which the users needed to wire funds to conspirators in order to further advance and cultivate these relationships;

17. It was further part of the conspiracy that conspirators would and did wire and send, and cause to be wired and sent, the proceeds that they had fraudulently obtained from victims to multiple financial institutions, including financial institutions located overseas, in order to promote the carrying on of the aforementioned fraud schemes;

18. It was further part of the conspiracy that conspirators would and did wire and send, and cause to be wired and sent, the proceeds that they had fraudulently obtained from victims to multiple financial institutions, including financial institutions located overseas, in order to conceal and disguise the source of, and to hinder any efforts to locate, those proceeds;

19. It was further part of the conspiracy that conspirators would and did withdraw fraudulently-obtained proceeds that had been deposited into their bank accounts in amounts under $10,000, in order to avoid filing Currency Transaction Reports that were required of United States financial institutions

under Federal law;

20. It was further part of the conspiracy that conspirators would and did share in the proceeds of the fraud schemes, usually receiving a set percentage of the proceeds that they received, withdrew, handled and transferred; and

21. It was further part of the conspiracy that conspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1956(h).

## COUNTS TWO AND THREE
### (Money Laundering – 18 U.S.C. § 1956(a)(1)(B)(i))

22. Paragraphs 1 through 6 of Count One of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

23. On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendant,

**OKECHUKWU DESMOND AMADI,**
a/k/a "Desmond Amadi,"

did conduct, and aid and abet others in conducting, a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit and transfer monetary instruments and funds which involved the proceeds of a

7

specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Date of Transaction | Amount | Nature of Transaction |
|---|---|---|---|
| Two | July 2, 2014 | $230,000 | Victim "U.E." wired funds into Naji's MS Products and Services account at Bank of America (-9753) |
| Three | July 7, 2014 | $75,000 | Naji, having obtained a cashier's check from his MS Products and Services account at Bank of America (-9753), deposited it into Morgan's account at JPMorgan Chase (-8365) |

In violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

## **FORFEITURE**

1. The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of 18 U.S.C. § 982(a)(1).

2. From his engagement in any or all of the violations alleged in Counts One through Three, the defendant,

> OKECHUKWU DESMOND AMADI,
> a/k/a "Desmond Amadi,"

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense and any property traceable to such property.

3. The assets to be forfeited include, but are not limited to the $1,210,300, involved in the offenses.

4. If any of the forfeitable assets described above, as a result of any act or omission of the defendant:

  (a) cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third person;

  (c) has been placed beyond the jurisdiction of the Court;

  (d) has been substantially diminished in value; or

  (e) has been commingled with other property which cannot be subdivided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. §853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

*[signature]*

FOREPERSON

W. STEPHEN MULDROW
Acting United States Attorney

By: *[signature]*
Patrick D. Scruggs
Assistant United States Attorney

By: *[signature]*
Simon A. Gaugush
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34

# UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

OKECHUKWU DESMOND AMADI
a/k/a "Desmond Amadi"

## INDICTMENT

Violations:  18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)

A true bill,

_____
Foreperson

Filed in open court this 19th day

of September, 2017.

_____
Clerk

Bail  $_____

GPO 863 525